Armstrong *v.* Ebener.

EDWARD A. ARMSTRONG

*v.*

ALBERT EBENER and EDWARD N. COHN.

1. One C. entered into an agreement with E. and three others, by which the latter were to form and incorporate an association to promote the sale of certain real estate belonging to C., it being the intention that these incorporators should do whatever would induce persons to take stock in such association, and to continue therein. After the formation of such association, C. wrote to the incorporators that he would instruct the trustee to whom he had conveyed the land in question to pay to them "§25 on each lot paid for by the association at the rate of $150, as compensation." *Held,* that this was not an assignment *in præsenti* of a specified portion of the proceeds of sale, but a payment to which the performance of the contemplated services in selling lots were a condition precedent.

2. The constitution and by-laws framed by the incorporators in pursuance of their agreement with C., provided for the election of officers annually, and at the first election all of such incorporators were chosen. Subsequently E. failed of re-election as treasurer, and took no active part afterwards in promoting the success of the association. *Held,* that E. was not entitled to compensation for the latter period, as by the terms of the agreement, which made no reference to his holding office, the contemplated services must be rendered as well out of office as in it.

On bill of interpleader.   Heard on pleadings and proofs between the defendants.

*Mr. M. P. Grey*, for Cohn.

*Mr. C. Bergen*, for Ebener

PITNEY, V. C.

The contest in this case is over a sum of money, a part of the proceeds of the sale of certain lands conveyed by Cohn to the complainant, in trust.   Prior to May 1st, 1884, Cohn was the owner of a tract of land containing over twenty acres, in the suburbs of Camden, which he had caused to be laid out in building lots and mapped, and which he was desirous of marketing.   To this end he called to his assistance four gentlemen, who, by their situation and character, he judged would be able to promote the sale of the lots, namely, the defendant Albert Ebener and Alexander Schlesinger, of Camden, and William P. Becker and Louis Krautter, of Philadelphia.   On the 14th of May, 1884, the parties entered into an agreement, expressed to be between Cohn of the first part, and Ebener, Schlesinger, Becker and Krautter of the second part, by which it was agreed, that the parties of the second part should form an association in this state, called the "Liberty Park Mutual Homestead Association," "having for its object the acquisition of real estate and the disposition and sale thereof to its members, upon payment of periodical installments of one dollar per week on each share, which was to be of the value of $200, and the holders of such shares to be entitled to one of the lots of land for each share by them held and to * * * adopt a constitution and by-laws providing for the management of its business and the control of its members."   It was further provided that Cohn should convey the lots so owned by him, being about four hundred and forty in number, to the complainant, in trust "that he should from time to time, upon request of the association so to be formed, and upon payment to him of $150, convey to the association, or to such shareholder or member of it as the association should designate, one lot of land, to be

chosen by the association by lot." And further, "That the said
parties of the second part should cause said association to be
formed and incorporated *and the said lots comprising said tract
of land to be sold as rapidly as possible.*" There were further
provisions not necessary here to be set out.

In pursuance of this agreement, the four members proceeded
to frame and adopt a constitution and by-laws and to organize
and incorporate an association known as the "Liberty Park
Mutual Homestead Association" as required by the agreement,
and, after the same had been approved by Cohn, he, together
with his wife, on the 2d of June, 1885, executed a deed of the
designated lots to the complainant. Before executing this deed
and on the 28th of May, Cohn wrote and delivered to the four
promoters the following letter, which is the foundation of Ebe-
ner's claim :

"MAY 28, 1884.

"*Messrs. Albert Ebener, Alexander Schlessinger, William P. Becker and Louis
    Krautter :*

"GENTLEMEN—Upon the creation of the trust for Liberty Park I will in-
struct the trustee to pay to you twenty-five dollars on each lot paid for by the
association at the rate of one hundred and fifty dollars, as compensation to you.
        "Yours &c.,                              E. N. COHN."

One of the articles of the association provided that there
should be a president, vice-president, secretary, treasurer and
eight directors, all of whom should be elected by the stockholders
at an annual meeting, to be held on the first Monday in July, in
each year. The first officers were, William P. Becker, presi-
dent ; Louis Krautter, vice-president ; Albert Ebener, treasurer,
and Alexander Schlesinger, secretary. The by-laws provided
that each shareholder was to be entitled to a deed for a lot when
he should have paid $200, and the particular parcel to be allotted
to him was to be determined by drawing lots, and such drawing
might take place before a lot was fully paid for. And they also
provided for weekly meetings of the shareholders, when the
weekly dues of one dollar for each share should be paid, and
when the drawings or allotment of lots to the shareholders should
take place, to the extent that the funds of the association war–

wanted such proceeding. The mode of conducting the business of the association was such as to attract to these meetings, not only those who had already subscribed for shares, but those who had such subscription under consideration.

It was proven and admitted at the hearing, that an important, if not an essential, part of the work which the four promoters were expected to do, in the way of promoting and expediting the sale of lots, and for which the compensation mentioned in the letter of May 28th was to be paid, was, besides inducing as many persons as possible to attend these meetings, to attend them themselves and explain the workings of the association, commend its object, and not only procure new subscribers, but to maintain the confidence of those who had already subscribed and prevent their abandoning the enterprise and forfeiting what they had already paid, and from taking advantage of a clause in the constitution that enabled a subscriber to withdraw from the association and receive back any payment he had made in excess of $25 at any time before a lot had been allotted to him.

The association was duly launched and was successfully managed. The four promoters were, except as presently to be stated, diligent in their work and attended the weekly meetings with great regularity.

During the first year $26,023.85 was paid into the association; one hundred and thirty-three out of the four hundred and forty lots conveyed to the trustee by Cohn, were paid for and conveyed to the association, and of these forty-four were conveyed to shareholders, leaving the title to eighty-nine remaining in the association. Of the total shares in the association, three hundred and ninety-six had been subscribed for, and upon them the shareholders had paid their dues, and were in good standing.

In the early part of the year 1885, difficulties arose between the defendant Ebener, who was treasurer, and the secretary, Schlesinger, and at the annual election of July, 1885, when, by the constitution, new officers were to be chosen, Schlesinger informed the stockholders that he would not serve as secretary with Ebener as treasurer, and that they must choose between the two. The result was, that a new treasurer was elected in place

of Ebener, and Schlesinger was re-elected as secretary, with the other officers, Becker and Krautter, as president and vice-president. These officers were re-elected annually until the association was wound up.

After his failure to be re-elected treasurer, Ebener took no further part in the affairs of the association and attended no more weekly meetings, and, on a few occasions, spoke disparagingly of its officers. He says that, while he did not attend the meetings, he did tell such shareholders, as he met outside, that they had better hold on to their shares.

The evidence that he took any active part in disparaging the enterprise is quite meagre, but it is enough, taken in connection with his own admissions on the stand, to satisfy me that whatever praise and commendation he gave the association after July, 1885, was decidedly faint, and that he gave, substantially, no aid to it thereafter. Schlesinger swears that the effect of some adverse influence was felt almost immediately after July, 1885; that the receipts of cash fell off, and many of those shareholders, who had made payments, withdrew their payments, so far as they could. In support of this view, he called attention to the treasurer's account, which shows receipts, for the second year, of only $17,870, and that while the cash paid back to withdrawing shareholders, during the first year, was only $40, and the number of such withdrawals only three, during the second year the number withdrawing was nineteen, and the cash withdrawn amounted to $492.90, and during the third year to $1,650; and that while the association was able the first year to pay the trustee for one hundred and thirty-three lots, during the second year it could pay for only eighty-seven, and during the third year for only fifty-eight lots.

This falling off in the prosperity of the enterprise Schlesinger and Cohn attribute to the failure, on the part of Ebener, to support and aid it and to his positive adverse influence.

In the meantime, and from the start, as often as the complainant, as trustee, received any money from the association for lots conveyed, he divided $25, on each $150 so received, among Becker, Krautter, Schlesinger and Ebener, paying $6.25 to each.

This practice of so dividing the commission and paying a share to each of the four promoters, was adopted by the consent of all parties.

At the end of two years and about four months, namely, in November, 1886, Ebener had received, as his one-fourth share of this commission, $1,456.25.

The defendant Cohn, in June, 1886, notified the complainant to pay Ebener no more commission, and the complainant ceased such payments to him after November 13th, 1886, but continued to pay Krautter, Becker and Schlesinger their stated commission of $6.25 each on every $150 received by him from the association, in payment for lots conveyed, retaining in his hands $6.25 on each $150 for Ebener's share of the same fund. This fund reserved in complainant's hands amounted, on the 23d of June, 1887, the date of. filing the bill, to $237.50, which is the subject of the present controversy, and, since the filing of the bill, other moneys have been paid by the association to complainant for lots conveyed, and the fund reserved is thereby considerably increased.

The defendant Cohn states his position, in his answer, as follows :

" That said defendant Ebener, during the year eighteen hundred and eighty-five, and in or about the month of July of that year, not only ceased to aid in inducing persons to become members of said association and in making sales of said lots and to assist in procuring purchasers to build thereon, but actively engaged in inducing members to withdraw from said association by false and malicious statements and accusations against it and its officers and the conduct by them of its affairs, as well as inducing persons who intended to or were willing to become members of said association, by like statements and accusations, to refrain from joining the same and to decline purchasing said lots, and actively worked against said association and the sale of said lots, so that he did it willful injury; and that on or about the thirtieth day of June, eighteen hundred and eighty-six, this defendant, because of the continued breaches of said agreement by said defendant Ebener, directed said complainant not to pay any further commissions to said defendant Ebener, and demanded that the same should be paid to this defendant."

And the defendant Ebener states his position as follows :

" This defendant admits that about the time of the execution of the said deed of trust the said.Edward N. Cohn agreed with William P. Becker, Louis

Armstrong v. Ebener.

Krautter, Alexander Schlesinger and Albert Ebener, that the complainant should pay to them, as compensation to them, twenty-five dollars on each lot paid for by the association at the rate of one hundred and fifty dollars, and denies that it was therein provided that said Edward N. Cohn should pay each of the said parties the sum of six dollars and twenty-five cents upon condition of their promoting the business of the before-mentioned company or association and the purchase of lots or some other consideration to your orator unknown.

" This defendant admits that the complainant, at the same time and afterwards, received a notice from the said Edward N. Cohn that he should pay to said Becker, Krautter, Schlesinger and Ebener the sum of twenty-five dollars from each one hundred and fifty dollars received from lots sold and conveyed by him, but states that said notice was in the nature of an assignment from said Cohn to said Becker, Krautter, Schlesinger and Ebener of said sum of twenty-five dollars and orders from said Cohn on the complainant to pay the same to said Becker, Krautter, Schlesinger and Ebener, and that said notice, assignment and order created a trust in the complainant that he should withhold said twenty-five dollars from said Cohn for the said Becker, Krautter, Schlesinger and Ebener, and pay the same to them ; that said twenty-five dollars were referred to in said deed of trust and understood at the time to be included in the commission and expenses provided in and by said deed as aforesaid and to be deducted from the purchase-money of each lot.    *    *    *

"And this defendant, further answering, states that the action of the said Cohn and his agents in this matter has been a fraud upon this defendant, in that this defendant was originally induced to undertake or join in the organization of ' Liberty Park Mutual Homestead Association' upon the promise that said Cohn should be excluded from influence therein; that all the property of the association and the whole management thereof should be beyond the control of said Cohn except only in case of default on the part of said association ; that this defendant should be treasurer, and the other officers and board of directors of said association should be such as he should name in the first instance and thereafter such as should be fairly elected without interference or influence of said Cohn; that the substitution of said complainant as trustee therein as aforesaid was to obviate such influence and place said twenty-five dollars, part of each one hundred and fifty dollars, beyond his control, and give him independent action for the one hundred and twenty-five dollars remaining parts of same; that soon after said association had been organized by this defendant and his friends, and many had joined the same and money was pouring into the treasury, this defendant had a difficulty with Cohn as to a mortgage which he found upon the property and which he demanded that Cohn should pay off and have canceled therefrom; that in accomplishing this in the interest of the association *this defendant excited the ill-feeling of said Cohn, so that said Cohn laid a plan to remove, and did finally by intrigue, misrepresentation, interference and fraud at the election, remove this defendant from being an officer of said association; that this has prevented this defendant from thereafter appearing as active in advancing said association and from having the material at his command*

*to set forth its claims as prior thereto ;* but this defendant submits that, not only-was said action of said Cohn a fraud on this defendant, but also said Cohn is estopped in equity from claiming advantage therefrom, and states that the moneys so placed in trust as aforesaid for this defendant were unaffected thereby, and this defendant is entitled to all of same, and as they accrue from time to time after the filing of said bill, under the trust and agreement in the first instance aforesaid."

Ebener attempted, at the hearing, to prove that Cohn was more or less responsible for his not being re-elected treasurer, but failed completely. Cohn had but one share in the association, never attended a meeting, and, so far as appeared, took no part whatever in its transactions, and does not appear to have used the least influence in the matter of the election of officers and directors ; and this ground, so taken by Ebener, was substantially abandoned by his counsel at the hearing. Ebener seemed to be under the impression that he had a vested right in the office of treasurer ; but he and his three associates, Becker, Krautter and Schlesinger, framed the constitution and by-laws, by which it was provided, that all officers should be subject to re-election and rejection, each year, by the votes of the shareholders, and he must have known that he held his office by the tenure of the will of the majority of the shareholders. Again : he seemed to be under the impression that, except in the capacity of an officer, he was under no obligation to further attend the weekly meetings of the association or to aid in promoting the sale of lots. But this, I think, is clearly a mistake. The contract between him and his associates, on the one part, and Cohn, on the other part, was plainly a continuing contract, and required the promoters to aid in promoting the sale of lots until all were sold. The language, above quoted, so shows. And such was the interpretation put upon it by all the parties. The other three promoters continued to attend the weekly meetings, and to promote sales, until the affairs of the association were wound up. The undertaking to promote the sale of lots was not clogged with any condition that the undertakers should hold any office in the association, nor was there any difficulty in the way of Ebener attending the weekly meetings, and aiding in the sale of lots, after he ceased to be treasurer. He says he could not work to so good an advantage as a private as-

he could as an officer.   This contention may be true, though I confess I cannot see why it should be true.   He had access to the books, and could have known all the transactions and the situation of the association, and could have explained them and commended the lots, as well in one capacity as the other.

At the hearing Ebener's counsel took two grounds:   First, he contended that the letter of May 28th amounted to an assignment, *in præsenti,* of so much of the proceeds of the sale of these lots to the four promoters which gave them an indefeasible interest to the extent named in those proceeds, not dependent on any future conduct of theirs.   I cannot assent to this proposition. The payment was expressed to be " as compensation."   Clearly, this was as compensation for services to be rendered, and the rendering of the services would seem to be a condition precedent to the payment.   In fact, payment was only to be made as fast as the lots were sold, and the work to be done by the promoters was to procure such sale.   Suppose all the promoters had died or removed from the neighborhood, and had done absolutely nothing in the way of promoting sales except to organize an association, could it be for a moment pretended that they should receive the same compensation as if they had lived and fulfilled their contract?   It seems to me the proposition answers itself.

It seems to me, that even if the affair had taken the shape of an absolute assignment, under seal, by Cohn, to the four, of the sum named, or even of a payment in advance by him, that on the failure, total or partial, of the parties to perform the services for which the payment was made, Cohn would have had a right to stop further payments, or to recover back a corresponding portion of the money paid, as on a failure of consideration.

Precedent for this is found in those cases where apprentices or attorneys' clerks have paid a fee in advance for instruction in the trade or profession, and have failed, for any cause for which they were not responsible, to receive instruction for the full period, and have been held to be entitled to recover back a portion of the fee so paid.   So in the case of premiums paid for admission into a partnership.   The subject is discussed by Lord Cairns, in *Atwood* v. *Maude, L. R. (3 Ch. App.) 369,* where he

cites and approves the language of Lord Cottenham, in *Hirst* v. *Tolson, 2 Macn. & G. 134,* "where a payment has been made by anticipation of something hereafter to be enjoyed; and, if circumstances arise so that that future enjoyment is denied, the party paying is not to lose his money." And see *1 Story Eq. Jur.* §§ *472, 474; Newton* v. *Rowse, 1 Vern. 460; Freeland* v. *Stansfeld, 2 Sm. & G. 479, 1 Jur. (N. S.) 8, 23 L. J. (N. S.) Ch. 923.*

The same principle was applied in this court in the case of *Crimmins* v. *Crimmins, 13 N. J. L. J. 12.*

Counsel for Ebener urges, in the second place, that the contract for services and compensation was joint, and not several; that, if the services were rendered by either of the promoters, and were satisfactory and efficient, the contract was performed, and the compensation had been earned; and that, inasmuch as Cohn had approved of the performance by making payments without protest to three of the promoters, and even to Ebener, after the alleged default, he cannot now set up failure to perform as a defence against this one. I do not think this contention is sound. The contract was for the several and individual services of four persons, and the efficiency and consequent value of their efforts was one of degree. It is to be presumed that it was contemplated by the parties that four men could make more sales in a given time than two or three, and by their several efforts complete the sale of the whole in a less time. Clearly, the question of the time occupied in marketing the lots was of importance to Cohn in the matter of interest on his investment. At any rate, Cohn contracted for the services and influence of four men, and he was entitled to receive it. And it was not shown, and, in the nature of things, could not be shown, that the lots were disposed of as rapidly by the three promoters after Ebener's withdrawal as they would have been with the aid of his services and efforts. In point of fact, all of the lots were not sold. Nor do I think Ebener can take advantage of the fact that payments were made to him after his default, and were made to the other promoters after they were stopped to him. I think this would be so even if there had been no division of commissions and severance of payment by consent. The other promoters were not morally re-

sponsible for Ebener's default, although they, in form, contracted for his continued services, and, as they continued to perform, on their several parts, it was but fair that they should be paid as much as they would have severally received if he had continued to perform. And if they were satisfied with the payments made to them, then Ebener cannot complain. In fact, if the performance and payment was to be joint, then Ebener cannot claim this fund in his individual right, and without his joint contractors join with him in the claim. As an individual, he would have no claim.

It was perhaps equitable and just, under the circumstances, that Ebener should have compensation for the services he actually performed, although he was not justified in stopping when he did. And I think he has received such compensation in full in the payments already received by him. The services rendered the first year of the enterprise bore more or less fruit in the second year, and he was paid compensation in full during that year and a part of the third.

Much time was spent at the hearing in proving the facts attending the removal of the mortgage mentioned by Ebener in his answer. The view which I have taken of the case renders all that evidence, in my judgment, valueless and immaterial. Had there been conflicting evidence, as to Cohn's being responsible for Ebener's being dropped from the office of treasurer, then such evidence might have been competent as showing a motive for Cohn's alleged action, and a probability that he did take the offensive course charged against him. But, in the absence of any evidence in that direction, I do not think it worth while to take any time in discussing the evidence about the mortgage, or expressing any opinion about it.

There should be a decree that Mr. Cohn is entitled to the fund in question and, as I understand the parties desire to submit the whole question, to all accretions to that fund made from the same source since the filing of the bill.